# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RICHARD SHARIF, | ) | Case No. 09 B 05868 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |
| | ) | |
| _____ | ) | |
| RAGDA SHARIFEH, in her capacity | ) | |
| as the Successor Trustee and Successor | ) | |
| Beneficiary of the Soad Wattar | ) | |
| Revocable Trust, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 10-2239 |
| | ) | |
| HORACE FOX, JR., in his capacity as the | ) | |
| U.S. Trustee of Richard Sharif's bankruptcy | ) | |
| estate and RICHARD SHARIF in his capacity | ) | |
| as the former Trustee of the Soad Wattar | ) | |
| Revocable Living Trust, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION ON MOTION TO DISMISS (Dkt. No. 42 )

Defendant Horace Fox, Jr., in his capacity as the Chapter 7 Trustee ("Trustee Fox") of the bankruptcy estate of Debtor Richard Sharif, asks that the court dismiss Plaintiff Ragda Sharifeh's two-count Adversary Complaint herein pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b)[1].

For the separate reasons noted herein, the Motion to Dismiss is granted.

---

[1] The caption incorrectly states that Horace Fox, Jr. is the U.S. Trustee. The U.S. Trustee appointed Mr. Fox to serve as the Debtor's Chapter 7 case Trustee pursuant to 11 U.S.C. § 701. 09-5868, dkt. no. 8.

## I. Background

The court takes judicial notice of the many pleadings, depositions and Federal Rule of Bankruptcy Procedure 2004 examinations submitted to date in this bankruptcy case and in related Adversary Proceeding 09-0770. "It is not error . . . for a court to take judicial notice of related proceedings and records in cases before that court." *State of Fla. Bd. Of Trustees of Int'l Imp. Trust Fund v. Charley Toppino & Sons, Inc.,* 514 F.2d 700, 704 (5th Cir. 1975). *See In re Theatre Row Phase II Associates,* 385 B.R. 511, 520 (Bankr. S.D.N.Y. 2008) where the court held that it can take judicial notice of documents filed in the case in deciding a motion to dismiss for failure to state a claim, although it cannot make factual findings about disputed facts from those documents. In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) the Supreme Court noted "[C]ourts must consider the complaint in its entirely, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."

The court's conclusions that Plaintiff Ragda Sharifeh lacks standing to proceed herein are conclusions that may be reached without resort to documents outside the scope of the pleadings. *Stoll v. Quintanar,* 252 B.R. 492, 496 (B.A.P. 9th Cir. 2000).

Prior to filing his chapter 7 petition, the Debtor, Richard Sharif, was involved in litigation in the Federal District Court for the Northern District of Texas. The Debtor and several other parties filed a complaint on July 8, 2005 against Wellness International Network, Ltd.; WIN Network, Inc.; Ralph Oats; Cathy Oats and Sheri Matthews (collectively "WIN") in the United States District Court for the Northern District of Texas asserting fraud, RICO and other claims; the plaintiffs therein sought damages of nearly $1 million. Amended Complaint Objecting to Discharge, Case No. 09 B 05868, Adversary Proceeding No. 09-00770, dkt. no. 10, at p. 2 (the "Am. Compl."). The Debtor and his co-plaintiffs did not initiate discovery in that action and did not cooperate with WIN's efforts to obtain discovery. *Id.* The Debtor and his co-plaintiffs had admissions deemed against them for their failure to respond to discovery requests. WIN moved for summary judgment on the ground that the admissions negated all claims asserted; the Debtor and his co-plaintiffs failed to introduce any

evidence in support of the claims. *Id.* The district court granted summary judgment against the Debtor Richard Sharif and his co-plaintiffs on those grounds. *Id.* The Debtor and his co-plaintiffs appealed the entry of summary judgment to the Fifth Circuit in 2007. *Id.* The Fifth Circuit affirmed all of the district court's rulings and noted:

> A review of the record on appeal demonstrates that Appellants' untimely performance in this court mirrors a lengthy history in the district court of dilatoriness and hollow posturing interspersed with periods of nonperformance or insubstantial performance and compliance by Appellants and their counsel, leaving the unmistakable impression that they have no purpose other than to prolong this contumacious litigation for purposes of harassment or delay, or both. The time is long overdue to terminate Appellants' feckless litigation at the obvious cost of time and money to the Defendants by affirming all rulings of the district court but remanding the case to that court for the reinstatement of its consideration of Appellees' motion for attorney's fees. In so doing, we caution Appellants that any further efforts to prolong or continue proceedings in this court, including the filing of petitions for rehearing, will potentially expose them to the full panoply of penalties, sanctions, damages, and double costs pursuant to FRAP 38 at our disposal.

*Id.* at 2-3 (citing *Sharif v. Wellness Int'l Network, Ltd.*, no. 07-10834, 2008 U.S. App. Lexis 7483, at *2 (5th Cir. April 8, 2008)).   On remand the district court awarded WIN attorneys' fees in the amount of $655,596.13 as a sanction against the Debtor and his co-plaintiffs. *See* Order on Mot. for Civil Contempt, Civil Action No. 3:05-CV-01367-B, dkt. no. 180 at p. 1,  District Court for the Northern District of Texas, Dallas Division.  The Debtor was served with post-judgment discovery and document requests. *Id.* The Debtor never complied with WIN's discovery requests. *Id.*

WIN filed a Motion to Compel post-judgment discovery on October 13, 2008; the motion was granted on November 19, 2008; the Texas district court ordered the Debtor to respond to outstanding discovery requests. *Id.* at 1-2. Despite the district court's order compelling the Debtor to comply with discovery requests, the Debtor did not respond to such requests nor did he appear for his deposition. *Id.*

On December 4, 2008, WIN filed a Motion for Civil Contempt against the Debtor for violating the Texas court's order on the Motion to Compel. *Id.* At a show cause hearing on January 13, 2009, at which the Debtor did not appear, the Texas court found clear and convincing evidence that he had violated a court order compelling him to comply with outstanding discovery requests and an order to appear at the January 13, 2009 show cause hearing. *Id.* at 3. On February 10, 2009 the

Texas court held the Debtor in civil contempt.  He was ordered to respond to post-judgment discovery and to reimburse WIN for attorneys' fees and costs incurred to prepare and file the motion to compel and the motion for civil contempt.  *Id.* at 3-5.  On February 24, 2009, two weeks after the Texas court's contempt ruling, the Debtor filed the instant bankruptcy case.

## II.        Allegations of August 24, 2009 Adversary Proceeding.

On August 24, 2009,Wellness International Network, Ltd., Ralph Oats and Cathy Oats ("the WIN Plaintiffs") filed adversary proceeding 09-00770 asking the court to deny Debtor a discharge pursuant to 11 U.S.C. § 727.

Count I of the amended adversary complaint, 09-00770, dkt. no. 10, alleged in part that the Debtor has "continuously concealed property that he admitted under penalty of perjury that he owned by claiming that such property is currently owned by the Soad Wattar Living Trust" in violation of 11 U.S.C. § 727(a)(2)(A).  Am. Compl., ¶ 20.  The WIN Plaintiffs also alleged that the Debtor was the Trustee of the Soad Wattar Revocable Living Trust of 1992 ("Soad Watter Trust"), exercised complete control over the trust, and held out the assets of the trust as his own.  Am. Compl., ¶ 21.

Count II alleged in part that "the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information" in violation of 11 U.S.C. § 727(a)(3).  *Id.* at ¶¶ 24-25.

Count III alleged in part that he "knowingly and fraudulently, in or in connection with the case made a false oath or account" in violation of 11 U.S.C. § 727(a)(4)(A).  Am. Compl., ¶¶ 27-28. Specifically, the WIN Plaintiffs asserted that the Debtor failed to disclose companies in which he was an officer within the past 6 years where the bankruptcy petition requires the Debtor to disclose all businesses in which he was an officer, director, partner or managing executive of a corporation during the past 6 years.   The Debtor did not disclose any businesses in response to this query.  *See* Statement of Financial Affairs ("SOFA"), Voluntary Chapter 7 Bankruptcy Petition (the "Petition"), Case No. 09 B 05868, dkt. no. 1 at p. 29, ¶ 18.

Count IV alleged that the Debtor failed to explain the loss of $5 million in assets that he claimed to own in a 2002 Washington Mutual Bank, N.A. Loan Application (the "Loan

-4-

Application") in violation of 11 U.S.C. § 727(a)(5). Am. Compl., ¶ 32. The assets listed in the Loan

Application included the following: (1) Logan Square MRI Center; (2) Sharif Pharmacy; (3)

Hermosa Medical Center; (4) three Banco Popular Accounts containing $90,000, $40,000 and

$50,000, respectively; (5) $1,400,000 in a 401(k) retirement fund; and (6) $1,400,000 in real estate

(collectively, the "Loan Application assets"). *See* Loan Application, Adversary Proceeding 09-

00770, dkt. no. 17-1. The Debtor later claimed at his Rule 2004 examination that he did not own any

of the property that he claimed to own in the Loan Application. May 13, 2010 Transcript of Debtor's

Rule 2004 Examination ("Transcript of Debtor's 2004 Examination"), Adversary Proceeding 09-

00770, Ex. 59 at 60-61. He has failed to explain the loss or disposition of the $5 million of assets in

issue.

Count V sought a declaratory judgment that the Soad Wattar Trust was the *alter ego* of the

Debtor because the Debtor exercised complete control over the trust, resulting in the unity of interest

between the Debtor and the trust such that separate personalities did not exist. Count V also alleged

that to the extent that the Loan Application assets had been transferred into the trust, the trust was

organized and operated as a mere tool or business conduit of the Debtor. Am. Compl., ¶ 35.

On April 15, 2010, the WIN Plaintiffs filed a Motion for Sanctions, Costs and Fees, and in

the alternative, a Motion to Compel, Motion for Costs and Fees, and Motion to Modify Scheduling

Order (hereinafter the "Sanctions Motion"), Adversary Proceeding 09-00770, dkt. no. 39. The court

held a hearing on the Sanctions Motion on April 21, 2010. The WIN Plaintiffs argued that the

Debtor had failed to comply with discovery requests and missed discovery deadlines for document

production and for responding to interrogatories. On April 21, 2010 an order was entered

compelling the Debtor to comply with all outstanding discovery by April 28, 2010 or risk an order of

default being entered against him. The hearing on the Sanctions Motion was continued to April 28,

2010.

On April 28, 2010, the WIN Plaintiffs reported that the Debtor had produced some

documents along with certain interrogatory responses on the afternoon of April 27, 2010. The

hearing was continued to May 24, 2010 to allow the WIN Plaintiffs time to assess whether the

Debtor's document production and interrogatory responses were in compliance with the April 21,

2010 order compelling the Debtor to comply with all outstanding discovery requests. At the hearing

on May 24, 2010, the WIN Plaintiffs complained that the Debtor had not fully complied with

discovery requests and should be sanctioned. *See* May 24, 2010 Transcript of Sanctions Hearing, *Wellness International, Ralph Oats and Kathy Oats v. Richard Sharif, Individually and as Trustee of the Soad Wattar Trust,* Adversary Proceeding 09-00770, dkt. no. 99 at 4 ("May 24, 2010 Hearing Transcript").

### III. Debtor Failed to Sign or Verify His Interrogatory Responses

Federal Rule of Civil Procedure 33(b), applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7033, requires in relevant part that:

> (1) ... [I]nterrogatories must be answered:
> (A) by the party to whom they are directed; or
> (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.
> (3) ... Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.
> (5) ... The person who makes the answers must sign them, and the attorney who objects must sign any objections.

Fed. R. Civ. P. 33(b)(1),(3) and (5). The Seventh Circuit Court of Appeals and the United States District Court for the Northern District of Illinois have determined that under Rule 33, answers to interrogatories must be verified and signed by the person answering the interrogatory, not only by the party's attorney. *See, e.g., Hindmon v. Natl.-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 619 (7th Cir.1982) (observing that interrogatory answers signed by an attorney and not the party violated "the clear mandate of Federal Rule of Civil Procedure 33(a)"); *accord Overton v. City of Harvey*, 29 F.Supp.2d 894, 901 (N.D.Ill.1998) (striking as summary judgment exhibit plaintiff's unverified answers to interrogatories signed only by attorney).

The Debtor's interrogatory responses as Trustee of the Soad Wattar Trust were signed by the Debtor, however, they were not made under oath. *See* May 24, 2010 Hearing Transcript at 6; Richard Sharif's Answers to Interrogatories as Trustee of the Soad Wattar Revocable Living Trust, Hearing Ex. No. 3 at p. 9 ("Sharif Trustee Interrog. Answers"). Similarly, the Debtor's individual interrogatory responses, which were signed by Debtor's attorney, were not answered under oath by him. *See* Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, May 24, 2010

Hearing Transcript, Ex. No. 4 at 9 ("Sharif Individual Interrog. Answers"); May 24, 2010 Hearing

Transcript at 6. Those responses should have been signed under oath by the Debtor as required by

Fed. R. Civ. P. 33(b).

The Debtor was not present at the hearing; his attorney did not explain why the interrogatory

responses were not signed under oath as required.

### IV. Debtor's Failure to Provide Documents Requested by the WIN Plaintiffs and the Bankruptcy Trustee

The WIN Plaintiffs asserted that the Debtor repeatedly failed to produce numerous

documents requested by them in requests for production and by Trustee Fox at the section 341

creditors meeting ("creditors meeting"), despite this court's April 21, 2010 order compelling the

Debtor to comply with all outstanding discovery requests.

### a.    Washington Mutual Loan Application and Related Documents

During the Debtor's initial creditors meeting ("creditors meeting") on March 25, 2009, the

WIN Plaintiffs and the Bankruptcy Trustee requested that the Debtor provide documents relating to

the Loan Application assets that he once claimed were his. The creditors meeting was continued to

April 21, 2009 to allow the Debtor additional time to gather documents related to the Loan

Application assets. *See* Sanctions Motion at p. 5, 09 B 05868, Adversary Proceeding 09-00770, dkt.

no. 39, p. 7 ("Sanctions Motion"). When the Debtor appeared at the continued creditors meeting he

did not provide the Bankruptcy Trustee or the WIN Plaintiffs with the requested documents; he

asserted that none of the Loan Application assets belonged to him. *Id.* The Debtor asserted that the

Soad Wattar Trust owned all of the Loan Application assets, that he was the trustee of the trust, and

that he lied when he represented that he owned those assets. *Id.*

Pursuant to Federal Rule of Bankruptcy Procedure 2004, on motion of any party in interest,

the court may order the examination of any entity. At the Rule 2004 examination ("2004

examination") of the Debtor, he confirmed under oath that he testified at the creditors meeting that

he lied in the Loan Application:

Q: The third sentence [of Debtor's answer to the Amended Adversary Complaint states], defendant testified at the 341 meeting that he lied on the loan application, that he did not own any of the real estate listed in the loan application, and that this property is owned by Soad Wattar Trust, his mother or sister. Do you see that statement? I'd be glad to orient you if you --

A: Yeah. Is that by the Answer, defendant admits?
Q: Uh huh.
A: Yeah. That on April '09 – okay.
Q: Is that a true statement?
A: Yes, yeah.

May 13, 2010 Rule 2004 Examination of Richard Sharif, *Wellness International, Ralph Oats, and Cathy Oats v. Richard Sharif, Individually and as Trustee of the Soad Wattar Trust*, Adversary Proceeding 09-00770, Ex. No. 59 at 60-61 ("Transcript of Debtor's 2004 Examination"). *See also* Defendant's Answer to Amended Complaint, dkt. no. 23, p. 8, 09 B 05868, Adversary Proceeding 09-00770.

Based upon the Debtor's assertion that the Soad Wattar Trust owned the assets listed in the Loan Application, the WIN Plaintiffs and the Bankruptcy Trustee requested documents relating to the formation and funding of the trust and documents evidencing ownership or transfer of the Loan Application assets. *See* Sanctions Motion at p. 7. The creditors meeting was continued to June 3, 2009 to give the Debtor time to provide the requested documents. At the June 3, 2009 creditors meeting the Debtor failed to provide any of the requested documents. Sanctions Motion at p. 7.

Subsequent to the Debtor's refusal to provide the documents at his second and third creditors meetings, the Debtor brought a Motion for Protective Order requesting that he be granted leave to tender documents relating to the Loan Application and the Soad Wattar Trust under a protective order to prevent disclosure of information to the Debtor's creditors and their attorneys. *See* 09 B 05868, dkt. no. 23. The Debtor's Motion for Protective Order was denied on June 11, 2009. *See* 09 B 05868, dkt. no. 25. It would be inconsistent with the purpose, goals and proper functioning of a bankruptcy system to conceal information of a debtor's financial circumstances from his or her creditors. Despite this court's denial of Debtor's Motion for Protective Order, he never tendered any documents relating to the Loan Application assets, prompting the Bankruptcy Trustee to file a

-8-

Motion for Turnover of Documents from Richard Sharif to Horace Fox, Jr. on October 20, 2009.
*See* 09 B 05868, dkt. no. 40. The court granted that motion on October 27, 2009 (09 B 05868, dkt.
no. 42). To date the Debtor has failed to comply with this court's order to turn over the required
documents to Horace Fox, Jr., the Trustee of his bankruptcy estate. *See* Sanctions Motion at p. 6.

The WIN Plaintiffs filed a document request regarding the Loan Application assets. *See*
Richard Sharif's Response to Plaintiffs' First Request for Production of Documents, May 24, 2010
Hearing Transcript, Ex. No. 1, ¶¶ 15-22, Adversary Proceeding 09-0770, dkt. No. 99., pp. 59-62.
("Sharif Production Responses"). The Debtor has failed to produce documents relating to the Loan
Application assets.

### b.    Richard Sharif Revocable Trust Documents

The WIN Plaintiffs asserted that the Debtor failed to disclose information and
documents relating to the Richard Sharif Revocable Trust despite interrogatory and production
requests requiring him to do so.

The Debtor listed the Richard Sharif Revocable Trust in his Petition as property owned by
another person that he controls. *See* Statement of Financial Affairs, ("SOFA") 09 B 05868, dkt. no.
1, p. 27. Based on this disclosure, the WIN Plaintiffs' interrogatories requested that the Debtor
identify each trust for the benefit of others that the Debtor created or contributed to in the last five
years. *See* Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, May 24, 2010
Hearing Ex. 4,  pp. 8-9, ¶ 11; Richard Sharif's Response as Trustee to Plaintiffs' First Request for
Production of Documents, May 24, 2010 Hearing Transcript, Ex. No. 2 at p. 2, ¶ 11 ("Sharif Trustee
Production Responses"). The Debtor responded  "no" to the interrogatory, which is wholly
inconsistent with the Debtor's SOFA disclosure of the Richard Sharif Revocable Trust on page 27
and his admission that he was the Trustee of the Soad Wattar Revocable Living Trust of 1992. *See*
Sharif Individual Interrog. Answers at p. 8, ¶ 11; May 24, 2010 Hearing Transcript at 9; SOFA, ¶ 14.

The WIN Plaintiffs also requested that the Debtor produce all documents referencing or
evidencing any assets held in trust in which the Debtor claims or has an interest. Sharif Production
Responses at ¶ 42 and Sharif Trustee Production Responses at ¶ 42. Again, despite Debtor's
acknowledgment of having an interest in the Richard Sharif Revocable Trust in his sworn bankruptcy

schedules (*See* SOFA at p. 27), the Debtor failed to produce any documents relating to the trust.
May 24, 2010 Hearing Transcript at 9-11.

### c.  Bank Statements and Financial Records

The WIN Plaintiffs asserted that the Debtor failed to produce bank statements and account
records relating to financial transactions involving Richard Sharif individually and the Soad Wattar
Trust. The Plaintiffs requested that the Debtor produce documents evidencing any account at a
financial institution in which the Debtor was a designated signatory. Sharif Trustee Production
Responses at p. 7, ¶ 44; Sharif Production Responses at pp. 7-8, ¶ 44. The Debtor failed to produce
any documents responsive to these requests and instead listed the names and addresses of three
financial institutions with corresponding account numbers. *See* Sharif Production Responses at p. 7,
¶ 44; Sharif Trustee Production Responses at p. 7, ¶ 44; May 24, 2010 Hearing Transcript at 11.

The WIN Plaintiffs also requested that the Debtor produce documents relating to any
checking, savings, money market, passbook, demand deposit, negotiable order of withdrawal or trust
account in which the Debtor had any interest. Sharif Trustee Production Responses at p. 8, ¶ 49;
Sharif Production Responses at p. 8, ¶ 49. The Debtor failed to produce any documents responsive
to this request, even though he had a personal account with JP Morgan Chase Bank. He
acknowledged his lack of compliance during his 2004 examination. Transcript of Debtor's 2004
Examination at 166. May 24, 2010 Hearing Transcript at 11-12.

During their investigation, the WIN Plaintiffs independently discovered numerous documents
that the Debtor failed to produce relating to assets held at A.G. Edwards in which the Debtor had an
interest. The WIN Plaintiffs discovered account statements from A.G. Edwards for September and
October of 2003 in the name of Soad Wattar, the Debtor's mother, and Richard Sharif as joint
tenants. A.G. Edwards & Sons, Inc. Account Statements, Ex. No. 61 to Debtor's 2004 Examination.
("A.G. Edwards Statements"). These statements revealed that approximately $752,050 in assets
were held in joint tenancy by Soad Wattar and Richard Sharif. *See* A.G. Edwards Statements. In his
Rule 2004 examination the Debtor admitted that while he had documents relating to this A.G.
Edwards account, he did not produce them. Transcript of Debtor's 2004 Examination at 172-173.
The Debtor also stated that the assets in this A.G. Edwards account were transferred to Wachovia

Bank, but the Debtor failed to produce any transfer documents. Transcript of Debtor's 2004 Examination at 174-176. The Debtor also failed to disclose the A.G. Edwards accounts in his bankruptcy petition. *See* Petition, dkt. no. 1, pp. 9-13, Schedule C of Personal Property and Schedule D of Property Claimed as Exempt.

The WIN Plaintiffs discovered a TransAmerica Triple Advantage VA variable annuity held at A.G. Edwards for the benefit of the Debtor and his sister, Ragda Sharifeh, as joint tenants, with a valuation of $39,248. May 24, 2010 Hearing Transcript at 22-23. Once again, the Debtor failed to provide information relating to this annuity despite receiving interrogatories and document requests requiring him to do so. May 24, 2010 Hearing Transcript at 22. At his 2004 examination the Debtor was unable to say where that money went. Transcript of Debtor's 2004 Examination at 178-179.

The WIN Plaintiffs estimate that approximately $912,000 in assets were held at A.G. Edwards for the benefit of the Debtor individually or jointly with his mother or his sister, yet the Debtor provided no information or documentation regarding the A.G. Edwards accounts. May 24, 2010 Hearing Transcript at 24.

The Debtor also failed to provide information or documentation evidencing other accounts that he admitted to having an interest in at his 2004 examination. May 24, 2010 Hearing Transcript at 26-31. The Debtor admitted the existence of a Soad Wattar Trust account at Banco Popular. During his 2004 examination, he admitted his failure to produce documents about various accounts:

1)    Q: Sir, I'm just asking. You have not given me one single account statement for the trust [at Banco Popular], have you?
A: Account statement?
Q: Yes.
A: You mean, from like the investment firm?
Q: Yes.
A: There are boxes available. These are, you know --
Q: You have not provided us a single account statement, have you?
A: I did not. Again, I did not know that you needed that one. If not, it's available. You have that.

2)    Q: Where are there accounts besides Banco Popular?
A: Banco Popular, absolutely, and whatever you need from Wells Fargo, I'll provide you with it.
Q: I'm just asking for the names of the companies – Wells Fargo and who else?

A: Wells Fargo, Wachovia, which is now Wells Fargo, has a mortgage payment
for the house because it comes out of the mother's living trust every month.
This is two – three.  What else?
Q: Any investment firms like Smith Barney or Morgan Stanley? I'm just throwing
out people that I can think of.
A: There is one she [Debtor's mother] has an account with Raymond James, since
2005, one account.  I just remembered this. I believe that's all I know right
now.

Transcript of Debtor's 2004 Examination at 107-109.

3)      Q: I'm not asking how much you use it. I'm asking why have you not produced to
me the JP Morgan Chase account statements as requested in discovery?
A: Counsel, I did list the only account that I have.  I'm sorry if I didn't produce
the statement available.  I know there's a question, Counselor, that I need to
reproduce because my lawyer would have told me to produce it.  I went by the
name of the bank and my account but –

Transcript of Debtor's 2004 Examination at 143-144.


### d.      Conveyance, Disposal, or Transfer of Asset Documents


The WIN Plaintiffs asserted that the Debtor failed to provide information relating to the

conveyance, disposal, or transfer of certain assets in which the Debtor once claimed an interest.  At

his 2004 examination the Debtor admitted that he once owned a 10% interest in the Logan Square

MRI & Diagnostic Center, Inc. ("Logan Square") and that he had relinquished it.  *See* Transcript of

Debtor's 2004 Examination at 96.  However, the Debtor never provided information or

documentation evidencing the disposition of his interest in Logan Square; he admitted this at the

2004 examination despite having received the WIN Plaintiffs' interrogatories and requests for

production inquiring about the disposition of his interest in Logan Square.  *See* Transcript of

Debtor's 2004 Examination at 96.

At that 2004 examination the Debtor denied ever having an ownership interest in Sharif

Pharmacy (Transcript of Debtor's 2004 Examination at 61).   However, the Debtor represented in a

2002 Internal Revenue Service income tax return that he was the 100% owner of Sharif Pharmacy.

*See* Transcript of Debtor's 2004 Examination at 68.  After the Debtor was confronted with the

-12-

inconsistency between his testimony and his 2002 income tax return, he testified that he does not examine his tax returns because his accountant does and that he does not understand them. *Id.* at 69. The Debtor testified that he held a 10% ownership interest in Sharif Pharmacy and that the 100% figure listed on his tax return was an error. *Id.* at 68. Whether the Debtor's ownership interest in Sharif Pharmacy was 10%, 100%, or zero as testified to on page 61 of his 2004 examination, he admitted at his 2004 examination that he produced no documentation evidencing the transfer of stock in Sharif Pharmacy, acknowledging his failure to comply with his obligation to disclose information about his financial affairs. *See* Transcript of Debtor's 2004 Examination at 72. The Debtor also admitted that he asked the office manager of Sharif Pharmacy for responsive documents from 1992 through the present but did not undertake other efforts to obtain those documents. *Id.* at 86-87.

### e.    Corporate Records

The WIN Plaintiffs asserted that the Debtor failed to produce corporate records for Sharif Pharmacy and Hermosa Medical Center after 2006. The WIN Plaintiffs' discovery requests specifically designated corporate records for Sharif Pharmacy and Hermosa Medical Center as documents for production. The Debtor never produced the requested documents even after this court's April 21, 2010 order compelling the Debtor's compliance with all outstanding discovery requests. May 24, 2010 Hearing Transcript at 34-37.

### f.    Documents Evidencing the Formation and Funding of the Soad Wattar Trust

The WIN Plaintiffs asserted that the Debtor failed to produce documents relating to the formation and funding of the Soad Wattar Trust. May 24, 2010 Hearing Transcript at 38. The WIN Plaintiffs argued that these documents are critical because the Debtor testified that the assets he once claimed as his own were actually assets of the trust.

The requests for production required the Debtor to produce documents establishing and funding the Soad Wattar Trust, evidencing the transfers of assets into the trust, and all other documents related to assets held in the trust. *See* Sharif Trustee Production Responses, Hearing Ex.

-13-

No. 2 at ¶¶ 27, 45-46, 49-50; May 24, 2010 Hearing Transcript at 38-41. The WIN Plaintiffs specifically requested all deeds, records, titles, or other documents that related to assets in the name of the Soad Wattar Trust from 2002 to the present. Debtor alleges that the Trust was funded with a $2,000,000 inheritance from his deceased father that came from an international wire transfer from Beirut, Lebanon through a financial entity in Dubai. Transcript of Debtor's 2004 Examination at 109. However, the Debtor also admitted that he did not have any of the documents evidencing the wire transfers in his possession and that he had not produced such documents to the WIN Plaintiffs. Transcript of Debtor's 2004 Examination at 109-111. The Debtor also admitted that except for one asset, the Revere house, he failed to produce any documents showing transfers of assets into the Soad Wattar Trust from 1992 to the present. *See id.* at 104-105. The Debtor failed to produce documentation relating to the formation and funding of the Soad Wattar Trust.

The WIN Plaintiffs also requested the 1992 trust instrument that established the Soad Wattar Trust. The Debtor admitted at his 2004 examination that he failed to produce the original trust instrument. Transcript of Debtor's 2004 Examination at 101.

A review of the Debtor's Statement of Financial Affairs reveals that he did not disclose that he was the Trustee of the Soad Wattar Trust. *See* SOFA, at ¶ 14, where only the Richard Sharif Revocable Trust was disclosed.

g.    **Signed Tax Returns and Documents Used to Prepare Debtor's Tax Returns**

The WIN Plaintiffs asserted that the Debtor failed to produce signed tax returns or any of the underlying source documents used to prepare tax returns. May 24, 2010 Hearing Transcript at 44. While the WIN Plaintiffs did receive some federal and state tax returns from 2003-2008 from the Debtor, none of the returns received was signed. *See* May 24, 2010 Hearing Transcript at 44; Sharif Production Responses at ¶ 10 and Sharif Trustee Production Responses at ¶ 10. When the Debtor was questioned about the unsigned tax returns at his 2004 examination, he stated that he was 100% sure that the tax returns that went to the government were signed, but he did not submit signed tax returns to the WIN Plaintiffs. *See* Transcript of Debtor's 2004 Examination at 130-131. The Debtor also stated that he did not attempt to obtain signed tax returns from the IRS. *Id.* at 130.

-14-

The Debtor also failed to produce the source documents used to prepare his tax returns and admitted the same at his 2004 examination. *Id.* at 135.

### h.   Documents Evidencing Debts Owed to Debtor's Family Members

The WIN Plaintiffs asserted that the Debtor failed to produce any documents underlying the debts that he owes to his family members. *See* Sharif Production Responses & Sharif Trustee Production Responses at ¶¶ 34-37; May 24, 2010 Hearing Transcript at 54. The Debtor's bankruptcy petition disclosed several debts owed to family members including the following: (1) $49,000 to Haifa Kaj, Debtor's sister; (2) $39,000 to Jamal Sharif, Debtor's brother; (3) $93,000 to Ragda Sharifeh, Debtor's sister; and (4) $90,000 to Soad Wattar, Debtor's mother. *See* Petition at dkt. no. 1, Schedule F, p. 17; May 24, 2010 Hearing Transcript at 55. Based on these disclosures in the Debtor's Schedule F, the WIN Plaintiffs requested that the Debtor produce documents referencing or evidencing debts owed to the above family members. *See* Sharif Production Responses, May 24, 2010 Hearing Ex. No. 1 at ¶¶ 34-37; Sharif Trustee Production Responses, Hearing Ex. No. 2 at ¶¶ 34-37. The Debtor failed to produce any documents evidencing the debts he owes to his relatives and asserted that those debts were based on oral agreements. May 24, 2010 Hearing Transcript at 56. The WIN Plaintiffs contend, and the court agrees, that it is hard to believe that $271,000 was transferred as loans to the Debtor without documents such as wire transfer forms, bank statements, canceled checks, emails or enclosure letters being created.

### V. Debtor's Response

In response to the WIN Plaintiffs' assertions regarding the Debtor's noncompliance, the Debtor's attorney argued that while there may be some deficiencies in the Debtor's discovery responses, the Debtor made a good faith effort to comply with all discovery requests. May 24, 2010 Hearing Transcript at 75-76. Debtor's attorney pointed out that the Debtor was initially unable to meet the discovery deadlines because he was in Syria attending to his ill mother who subsequently passed away. May 24, 2010 Hearing Transcript at 68. When the court requested proof of the Debtor's whereabouts the Debtor's attorney produced airline tickets to Syria and a copy of the

mother's death certificate. *Id.* This court did not believe, however, that the Debtor made a serious effort to comply with the WIN Plaintiffs' discovery requests before or after his mother's death.

The Debtor's attorney argued that the WIN Plaintiffs' counsel never called him to object to the sufficiency of the discovery responses before filing the Sanctions Motion. May 24, 2010 Hearing Transcript at 68-69. According to him, the WIN Plaintiffs' supplement to their Sanctions Motion did not contain a statement required by the District Court of the Northern District of Illinois' Local Rule 37.2, certifying that the movant consulted with opposing counsel regarding the discovery defects before filing a motion for discovery and production of documents. May 24, 2010 Hearing Transcript at 77-78. This court notes that a phone call would have been futile because the Debtor was so grossly out of compliance with his discovery obligations. The court notes that the attorney for the WIN Plaintiffs may have complied with Local Rule 37.2 as their Sanctions Motion includes a certification that he conferred with the Debtor's attorney about the relief sought in the Sanctions Motion before it was filed. Sanctions Motion at p. 14. The Debtor's counsel's complaint in this regard lacks specificity regarding which pleading lacks the required certification/statement of conference/consultation. *See* Local Rule 7037-1 of the Local Rules of the Bankruptcy Court for the Northern District of Illinois which has a similar requirement.

The Debtor's attorney asserted that he produced additional documents after the Debtor's 2004 examination when he surmised, based on the questions that were posed to the Debtor, that the WIN Plaintiffs wanted more documents. The Debtor's attorney took it upon himself to produce bank statements from several financial institutions relating to the Soad Wattar Trust, the Debtor's personal bank accounts and the Sharif Pharmacy. May 24, 2010 Hearing Transcript at 70-71. He did not state which documents were produced after the 2004 examination. The court has no idea what was contained in the late production, or whether those documents were responsive to the WIN Plaintiffs' requests and why they were not produced sooner. The court notes that the Debtor's 2004 examination took place on May 13, 2010; any documents produced by the Debtor's attorney after that date were well outside of the April 28, 2010 deadline that the court set for the Debtor to comply with all outstanding discovery requests, preventing the WIN Plaintiffs from questioning the Debtor about those documents at his 2004 examination.

## VI. Ragda Sharifeh's Involvement With the Bankruptcy Case and Adversary

-16-

**Proceeding 09-0070 Before the Entry of The July 6, 2010 Default Judgment Order**

Ragda Sharifeh testified at a deposition herein on June 10, 2010 that her brother, Richard
Sharif, the Debtor, acted as her agent in the litigation in the United States District Court for the
Northern District of Texas.  Transcript of June 10, 2010 Deposition of Ragda Sharifeh ("Ragda
Sharifeh Depostion"), 09 B 05868, dkt. no. 78, Exhibit A, pp. 47-48.  She directed the Debtor to file
the litigation, instructed him on how to proceed with the litigation, and instructed him to represent to
third parties that he owned the Loan Application assets.

At page 95 of the Deposition,  Ragda Sharifeh testified about telling the Debtor to use
property to buy a house for their mom:

> Q: And again, it's checked self-employed.
>
> Were you aware that Richard represented
>
> to Washington Mutual Bank that he, as self-employed,
>
> owned Logan Square MRI Center, Sharif Pharmacy, and
>
> Hermosa Medical Center?
>
> A: What I told him is to use the home
>
> address, the clinic address, in order to secure the
>
> amount of money to be used to buy the house for mom.

At page 96 of the Deposition, Ragda Sharifeh testified that the assets were being held out by
the Debtor as his own although he was not the owner of them:

> Q:  So did you know that these assets, the company's and the real
>
> estate, were being held out by Richard as representing that he owned
>
> all of them?  He was representing to the bank that he owned the real
>
> estate and the business?
>
> A:  He is, he is not the owner.  Otherwise
>
> his ex-wife would have cleaned him out, but I told
>
> him that he could make that statement.

-17-

Ragda Sharifeh was scheduled herein on the Debtor's Schedule F as an unsecured nonpriority creditor. 09 B 05868, dkt. no. 1, Schedule F, p. 17. According to a Certificate of Service dated February 28, 2009, she was sent notice of the filing of this bankruptcy case. 09 B 05868, dkt. no. 9, p. 3.

### VII. Ragda Sharifeh as a Successor Beneficiary

Ragda Sharifeh purports in Adversary Proceeding 10-2239 to act as a successor beneficiary regarding the Soad Wattar Trust. Her unsupported allegation in this regard will be given no weight by this court as she has not alleged sufficient facts to make this assertion plausible. In any event, however, a trust beneficiary cannot sue or be sued regarding the trust.

Under the Illinois Trusts and Trustees Act, trustees, not beneficiaries, are vested with the power to pursue "claims in favor or against the trust estate." The trustee has the power to "compromise, contest, prosecute or abandon claims or other charges in favor of or against the trust estate." *In re Schneider*, 417 B.R. 907, 913 (Bankr. N.D. Ill. 2009); 760 ILCS 5/4.11. The trustee, not the beneficiaries, has the exclusive authority to sue third parties who injure the beneficiaries' interest in the trust. *Godfrey v. Kamin*, 2000 WL 1847768, **3-4 (N.D. Ill. Dec. 14, 2000). Plaintiff Ragda Sharifeh has no authority to sue Trustee Fox.

### VIII. Ragda Sharifeh Is Not a Successor Trustee

Ragda Sharifeh has failed to allege in Adversary Complaint 10-2239 any factual or legal basis for her claim to be the successor trustee of the Soad Wattar Trust. She alleged in a Motion to Intervene, Adversary Proceeding 09-0770, dkt. no. 68, ¶ 14, that shortly after a temporary restraining order was entered by a state court judge on July 21, 2010 in a Cook County Circuit Court Chancery Division lawsuit, Richard Sharif resigned as the trustee of the Soad Wattar Trust and she became its trustee.[2] As of July 6, 2010, however, the trust no longer existed. The trust's assets became property

---

[2]Ragda Sharifeh and Haifa Kaj sued Richard Sharif in state court after this court found that the Soad Wattar Trust was his *alter ego*. They sought, amongst other things, a declaration that Ragda Sharifeh was the successor beneficiary of the Soad Wattar Trust, and an injunction requiring Richard Sharif to transfer all Soad Wattar Trust assets to Ragda Sharifeh and enjoining him from transferring assets in the Soad Wattar Trust to any of his creditors who filed claims against him in his bankruptcy case. *See Ragda Sharifeh and Haifa Kaj v. Richard Sharif*, 10 CH 30432, filed on July 15, 2010 in the

-18-

of the Debtor's estate as of the commencement of the bankruptcy case once the July 6, 2010 order was entered declaring the trust to be the Debtor's *alter ego*.   In *In re Sklarin*, 69 B.R. 949, 954 (Bankr. S.D. Fla. 1987), the court ruled that "[i]t is well established that property of the Debtor in the possession, custody and control of its alter ego comprises property of the estate at the commencement of the case, and that bankruptcy courts have the power to disregard separate corporate entities so as to reach the assets of its non-debtor alter ego to satisfy debts of the Debtor." (quoting *In re F & C Services, Inc.*, 44 B.R. 863, 868 (S.D. Fla. 1984)).

## IX.  STANDARDS ON MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b), provides that a party may assert by motion its defense of failure to state a claim upon which relief can be granted.

To successfully resist a motion to dismiss, the complaint must contain sufficient facts, which if accepted as true, "state a claim to relief that is plausible on its face.*" Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A plaintiff has to provide the "grounds of his 'entitlement to relief' rather than labels, conclusions or a formulaic recitation of the elements of a cause of action." *Id.* at 555. Bald assertions and conclusions of law do not suffice to defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Amron v. Morgan Stanley Inv. Advisors Inc.,* 464 F.3d 338, 344 (2d Cir. 2006).  A pleader has to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1944 (2009).

To prevail on a motion to dismiss a complaint pursuant to Rule 12(b)(6) it must be clear in the pleadings that no set of facts could be proven in support of the plaintiff's claims that would entitle him to the relief requested. *Panaras v. Liquid Carbonic Industries Corp.,* 74 F.3d 786, 791 (7th Cir. 1996).

---

Circuit Court of Cook County, Illinois.  However, the temporary restraining order entered in state court may have restrained nothing, as the trust assets became part of the bankruptcy estate as of the date of bankruptcy filing. *See infra In re Sklarin*, 69 B.R. 949, 954 (Bankr. S.D. Fla. 1987).

As required by law, the court accepts all factual allegations in the complaint as true. *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In addition, the court construes all facts alleged in the Adversary Complaint in a light most favorable to the nonmoving party, Plaintiff Ragda Sharifeh. *Stoll v. Quintaur (In re Stoll)*, 252 B.R. 492, 495 (B.A.P. 9th Cir. 2000).

While a court may not look beyond the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, a "narrow exception to this rule...permits a ...court to take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A court may take judicial notice of prior court proceedings and court records. This exception allows "courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard." *Id.* at 1081.

It is a matter of record that Plaintiff Ragda Sharifeh has no standing to sue as a beneficiary of the Soad Wattar Trust and that she did not become a trustee of the trust on or after July 21, 2010. These two legal rulings were made in this court's March 10, 2011 and March 14, 2011 orders disposing of her motions. Those orders have not been appealed, making them undisputed. The many documents referenced by the court herein are not matters outside the pleadings presented to and not excluded by the court. Federal Rule of Bankruptcy Procedure 7012(d) requires that when matters outside the pleadings are presented, and not excluded, that all parties be given a reasonable opportunity to present all material that is pertinent to the motion. The court has taken judicial notice of documents of record in the bankruptcy case and the related Adversary Proceeding 09-0770, proceedings in which Plaintiff Ragda Sharifeh was involved as a creditor, as a movant on a motion for sanctions and as a movant regarding her motions to intervene and to vacate. The information that this court takes judicial notice of does not create material issues of fact requiring that the motion to dismiss herein be considered as a motion for summary judgment.

## X. COUNT I: CONVERSION

Count I of Plaintiff Ragda Sharifeh's Adversary Complaint herein alleges that Bankruptcy Trustee Horace Fox, Jr wrongfully converted the assets of the Soad Wattar Trust. She claims standing to sue herein as both a successor beneficiary and as a successor trustee to the trust.

According to the Plaintiff she became a successor beneficiary pursuant to a trust amendment dated October 8, 2007. She asserts that she became a successor trustee after July 21, 2010 when Debtor Richard Sharif resigned as trustee. At the July 27, 2011 hearing on the motion to dismiss, her attorney asked the court to consider a document that may have appointed her as a successor beneficiary. When the court asked counsel about the document he refused to answer the court's questions. Due to his refusal to respond to the court's inquiry, consideration and acceptance of the document was denied.

At paragraphs 33 through 47 of Adversary Complaint 10-2239 Plaintiff Ragda Sharifeh complains as follows:

Trustee Fox knew that the WIN Plaintiffs in Adversary Proceeding did not have standing to raise an *alter ego* claim (¶ 33);

Debtor Richard Sharif produced documentation related to the Soad Wattar Trust in compliance with an October 27, 2009 Order (¶ 34);

Trustee Fox knew that the Soad Wattar Trust was valid under Illinois law (¶ 35);

based on documents turned over by Richard Sharif's attorney, William J. Stevens, Trustee Fox knew that the Soad Wattar Trust was not the *alter ego* of Richard Sharif (¶ 36);

Trustee Fox knew of an October 7, 2007 amendment to the Soad Wattar Trust which named Ragda Sharifeh as its successor beneficiary (¶ 37);

Plaintiff Ragda Sharifeh produced the October 8, 2007 amendment at her deposition on June 10, 2010 (¶ 38);

a July 6, 2010 order was entered granting the WIN Plaintiffs' motion for default and sanctions where the court held that the Soad Wattar Trust was Richard Sharif's *alter ego* (¶ 39);

-21-

Trustee Fox advised Wells Fargo Financial Advisors that Richard Sharif's bankrupt estate owned the funds being held by Wells Fargo in the name of the Soad Wattar Trust (¶ 40);

Trustee Fox incorrectly stated on July 27, 2010 in a motion that the Debtor produced an amendment to the Soad Wattar Trust (¶ 41);

Trustee Fox's statement was incorrect because (1) Richard Sharif did not produce the original Soad Wattar Trust because he was not in possession of it and (2) Richard Sharif only produced copies of amendments dated May 15, 1996; April 26,  2007 and October 7, 2007 (¶ 42);

Trustee Fox knew that Plaintiff Ragda Sharifeh was the successor beneficiary of the Soad Wattar Revocable Living Trust when he sought turnover of the trust's assets in a motion on July 27, 2010 (¶ 43);

Trustee Fox knew that Plaintiff Ragda Sharifeh was the successor beneficiary of the assets contained in the Soad Watter Trust on August 4, 2010 when he caused his attorney to obtain an order (¶ 44);

Trustee Fox knew that Plaintiff Ragda Sharifeh was the successor beneficiary of the assets of the Soad Wattar Trust which were held by Wells Fargo Financial prior to July 6, 2010 (¶ 45);

Trustee Fox did not serve Plaintiff Ragda Sharifeh with notice of pleadings he filed to have the assets in the Soad Wattar Trust turned over to him (¶ 46);

Trustee Fox has unconstitutionally and unlawfully disentitled Ragda Sharifeh of the assets of the Soad Wattar Trust (¶ 47).

Plaintiff Ragda Sharifeh asks in Count I that the court order Trustee Fox to turn over to her all assets under his control, not just the assets of the Soad Wattar Trust.

On its face, the allegations asserted in Count I of her complaint fail to establish that she is entitled to relief against Trustee Fox for conversion of trust assets for two reasons: (1) as an alleged beneficiary she has no authority to sue Trustee Fox under Illinois law and (2) she alleges that she became the trust's trustee after July 21, 2010, after it ceased to exist and its assets had been declared to be property of Debtor Richard Sharif's bankruptcy estate. The court finds that the allegations in Count I of Plaintiff Ragda Sharifeh's complaint are insufficiently plead and that even when taken as true, the court finds as a matter of law that there is no set of facts under which she can recover.

### a. Allegation that Trustee Fox knew that the WIN Plaintiffs did not have standing to raise an alter ego claim:

Plaintiff Ragda Sharifeh appears to suggest that Trustee Fox has taken possession of certain assets based on information gained from third parties that he should not have believed. He gained possession of certain assets pursuant to a July 6, 2010 court order after the court gave all parties concerned an unlimited opportunity to contest the WIN Plaintiffs' allegations about Debtor Richard Sharif's refusal to satisfy discovery obligations.

### b. Allegation that Debtor Richard Sharif produced documentation related to the Soad Wattar Trust in compliance with an October 27, 2009 order:

This factual allegation is unsupported. Specifically, Plaintiff Ragda Sharifeh fails to identify what was produced, whether the production was timely and complete, and whether the alleged production preceded depositions and Federal Rule of Bankruptcy Procedure 2004 examinations of the Debtor and others involved in the trust's formation. In any event, Debtor Richard Sharif's failure to produce many items of discovery led to the entry of the July 6, 2010 order which allowed the entry of judgment against him in the WIN Plaintiffs' Adversary Proceeding 09-0770.

### c. Allegation that Trustee Fox knew that the Soad Wattar Trust was valid under Illinois law:

-23-

Trustee Fox is not responsible for determining the validity of the trust. This court has to make that determination on the record after all parties have been accorded appropriate access to discovery. It would be unfair to address the validity of the trust where its trustee, Debtor Richard Sharif, has failed to disclose records of its formation and operation.

**d. Allegation that Trustee Fox knew that the Soad Wattar Revocable Living Trust was not Debtor Richard Sharif's *alter ego* based on records turned over by Attorney William Stevens:**

Trustee Fox cannot be held responsible for knowing anything about the *alter ego* status of the trust where Debtor Richard Sharif unreasonably and illegally denied him and the WIN Plaintiffs access to the records of the trust's formation and operation. In addition, this allegation fails because it does not identify what records it refers to. In any event, the production of records was insufficient; the WIN Plaintiffs and Trustee Fox had the right to examine and review all pertinent information. The Debtor's lack of cooperation prevented this vital review.

**e. Allegation that Trustee Fox knew of an October 7, 2007 amendment to the Soad Wattar Revocable Living Trust which named Ragda Sharifeh as its successor beneficiary:**

Trustee Fox cannot be held responsible for the existence of documents under the circumstances herein where he was unreasonably and illegally denied access to the records of the trust's formation and operation in time to question involved parties about them.

**f. Allegation that Ragda Sharifeh produced the October 8, 2007 amendment at her deposition on June 10, 2010:**

Plaintiff Ragda Sharifeh has not pinpointed where in her deposition such disclosure can be found. In any event, this allegation does not indicate that if the alleged disclosure was made, that it was timely in terms of allowing the WIN Plaintiffs and Trustee Fox to investigate it in relation to the

-24-

formation and operation of the Soad Wattar Trust.

**g. Allegation that the July 6, 2010 order was entered granting the WIN Plaintiffs' motion for default:**

There is no question that such an order was entered by this court on July 6, 2010.

**h. Allegation that Trustee Fox advised Wells Fargo Financial Advisors that Richard Sharif's bankrupt estate owned the funds being held in the name of the Soad Wattar Trust:**

The allegation is deficient in that it does not allege when such a communication was made. In any event, that statement could have been made validly after the court entered the July 6, 2010 order.

**i. Allegation that Trustee Fox incorrectly stated on July 27, 2010 in a motion that the Debtor produced an amendment to the Soad Wattar Trust:**

The allegation is deficient in that it does not allege when the statement was made. Nor does the allegation point to which motion it concerns. In addition, the allegation does not explain what was incorrect about the statement.

**j. Allegation that Trustee Fox's statement was incorrect because Richard Sharif did not produce the original Soad Wattar Trust because it was not in his possession and that Richard Sharif only produced copies of amendments date [sic] May 15, 1996; April 26, 2007 and October 7, 2007:**

The allegation does not indicate when Richard Sharif did not have possession of the original Soad Wattar Revocable Living Trust. Nor does the allegation indicate what amendments it refers to.

**k. Allegation that Trustee Fox knew that Plaintiff Ragda Sharifeh was the successor beneficiary of the Soad Wattar Trust when he sought turnover of the assets in a motion on July 27, 2010:**

By July 27, 2010 Trustee Fox may have acted pursuant to a court order that declared that the assets in question were property of the bankruptcy estate.

**l. Allegation that Trustee Fox knew that Plaintiff Ragda Sharifeh was the successor beneficiary of the assets on August 4, 2010 when he caused his attorney to obtain an order:**

Trustee Fox and his attorney may have been acting pursuant to the July 6, 2010 court order when turnover of assets was sought in August of 2010.

**m. Allegation that Trustee Fox knew that Plaintiff Ragda Sharifeh was the successor beneficiary of assets of the Soad Wattar Trust which were held by Wells Fargo Financial prior to July 6, 2010:**

It is of no importance whether Plaintiff Ragda Sharifeh was a successor beneficiary before or after July 6, 2010, as the law is that a trust beneficiary generally does not have standing to sue third parties absent the wrongful refusal of the trustee to do so. In this matter where the trustee is being sued, he is not refusing to pursue a cause of action on behalf of the trust. *Wong v. H.S.B.C.*, 2010 WL 3154976, at *6 (S.D.N.Y. 2010). In addition, Plaintiff Ragda Sharifeh could have but did not seek leave to intervene in the bankruptcy case or the WIN Plaintiffs' Adversary Proceeding before those matters were adjudicated. The court notes generally that Plaintiff Ragda Sharifeh does not allege in her Adversary Complaint that Debtor Richard Sharif as Trustee of the Soad Wattar Revocable Living Trust did anything improper. He has been named in the caption of her Adversary Complaint as a defendant; however, there are no allegations against him in it. Her failure to complain may reflect that she is satisfied with his conduct in refusing to cooperate with discovery in the both the bankruptcy case and the WIN Plaintiffs' Adversary Proceeding. The exception to the

prohibition against a beneficiary being allowed to sue on behalf of a trust does not apply herein because to date Plaintiff Ragda Sharifeh, the alleged beneficiary, has not complained about her trustee's conduct. *See Stoll,* 252 B.R. at 495 and *Saks v. Damon Raike & Co.,* 8 Cal.Rptr.2d 869, 874-75 (Ct. App. 1992). In *Saks* the court held that under principles of trust law, a beneficiary of a trust generally lacks standing to sue third parties on behalf of the trust. There, beneficiaries brought an action on their behalf and on behalf of a trust against an attorney and a real estate broker employed by the trustee. They sued for breach of contract and breach of fiduciary duty. The beneficiaries were found to not have standing to sue the attorney and real estate broker absent the trustee's wrongful refusal to do so. "Absent special circumstances, an action prosecuted for the benefit of a trust estate by a person other than the trustee is not brought in the name of a real party in interest and is demurrable." *Powers v. Ashton,* 118 Cal.Rptr. 729, 787 (Ct. App. 1975).

### n. Allegation that Trustee Fox did not serve Plaintiff Ragda Sharifeh with notice that he had filed pleadings to have the assets in the Soad Wattar Revocable Living Trust turned over to him:

Trustee Fox owed notice to the parties involved in the litigation in issue. As a beneficiary Plaintiff Ragda Sharifeh was not a party; her trustee Debtor Richard Sharif was the party who represented the Soad Wattar Trust. In addition, Plaintiff Ragda Sharifeh does not indicate with specificity what pleading this allegation concerns. The court notes that the WIN Plaintiffs requested that the trust's assets be declared Debtor Richard Sharif's *alter ego* in Count V of their Amended Complaint in Adversary Proceeding 09-0770.

### o. Allegation that Trustee Fox unconstitutionally and unlawfully disentitled Ragda Sharifeh of the assets of the Soad Wattar Trust:

Trustee Fox had a court order allowing him to take possession of the assets in question. He did not act without constitutional and legal rights. The court will not accept as true these unsupported legal conclusions.

Plaintiff Ragda Sharifeh fails to cite to any statute or other legal authority to support her

claim that Trustee Fox converted the trust assets when he took possession of them as allowed by the July 6, 2010 court order. To support an allegation of conversion a plaintiff has to prove that the accused obtained unauthorized possession or use of an item or service. Under Illinois law, Plaintiff Ragda Sharifeh has to plead and prove that "(1) [she] has a right to the property; (2) [she] has an absolute and unconditional right to the immediate possession of the property; (3) [she] made a demand for possession and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Brodsky v. HumanaDental Insurance Co.*, 2011 WL 529302, at * 6 (N.D. Ill. February 8, 2011) (quoting *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)).

Accepting all allegations of the complaint as true and construing the allegations in the light most favorable to Plaintiff Ragda Sharifeh, the court finds that her claim for conversion must fail. Nowhere in the Adversary Complaint does Plaintiff Ragda Sharifeh allege that Trustee Fox's conduct was unauthorized. Trustee Fox's acts in taking possession of trust assets was authorized by the July 6, 2010 order.

Her allegations that Trustee Fox knew that the Soad Wattar Revocable Living Trust was valid fails to account for the fact that both Trustee Fox and the WIN Plaintiffs sought information about the formation and operation of the Trust to no avail. The Debtor's lack of cooperation is documented herein. Plaintiff Ragda Sharifeh should not expect legal professionals to rely on her bald assertions that a trust exists, that she is the trust's beneficiary or that she is the trust's trustee. Rule 1.3 of the Illinois Rules of Professional Conduct and Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 9011 require attorneys to inquire about the factual and legal basis of matters before acting on them. See Illinois Supreme Court Rules, Article VIII, Illinois Rules of Professional Conduct of 2010, Section 1.3 which states: "[a] lawyer shall act with reasonable diligence and promptness in representing a client." F.R.B.R. 9011(b) states that:

> "[b]y presenting to the court a petition, pleading, written motion, or other paper, an
> attorney or unrepresented party is certifying that to the best of the person's
> knowledge, information, and belief, formed after an inquiry reasonable under the
> circumstances . . . (3) the allegations and other factual contentions therein have
> evidentiary support or, if specifically so identified, are likely to have evidentiary
> support after a reasonable opportunity for further investigation or discovery . . .

Federal Rule of Bankruptcy Procedure 9011(b).

Plaintiff Ragda Sharifeh's allegation that Trustee Fox knew that the Soad Wattar Trust was not the debtor's *alter ego* fails to account for the fact that when it was convenient and in his interest to do so, with Plaintiff Ragda Sharifeh's permission or at her direction, the Debtor claimed its assets as his own. *See infra* pages 32-35 of this opinion where Ragda Sharifeh's testimony in this regard is noted. Now Plaintiff Ragda Sharifeh asserts otherwise when the WIN Plaintiffs have alleged for purposes of their *alter ego* claim that the Debtor and the Soad Wattar Trust do not operate separately.

As noted in this opinion, *infra at* pages 26-27, even if Plaintiff Ragda Sharifeh is a successor beneficiary of the Soad Wattar Trust, she does not have standing to sue Trustee Fox for conversion. Under the Illinois Trusts and Trustees Act, trustees, not beneficiaries, are vested with the power to pursue "claims in favor or against the trust estate." That statute provides that the trustee has the power to "compromise, contest, prosecute or abandon claims or other charges in favor of or against the trust estate." 760 ILCS 5/4.11. In *In re Schneider*, 417 B.R. 907, 913 (Bankr. N.D. Ill. 2009) the court held that under Illinois law a trust possesses "a distinct legal existence . . . and can sue or be sued through its trustee in a representative capacity on behalf of the trust" (quoting *Sullivan v. Kodsi*, 359 Ill.App.3d 1005, 1010 (1st Dist. 2005)). Trustee Fox did not err if he did not notify Plaintiff Ragda Sharifeh, as alleged in ¶ 46 of her Adversary Complaint, that he filed pleadings in the bankruptcy court to have the assets contained in the Soad Wattar Trust turned over to him. As a beneficiary she is not the real party in interest regarding the trust and there is nothing unconstitutional about a bankruptcy trustee's inquiry about assets being held by a debtor and seeking turnover of the same.

The court notes that before the trust's assets were declared to be the Debtor's *alter ego* on July 6, 2010, Plaintiff Ragda Sharifeh appeared in the WIN Plaintiffs' Adversary Proceeding on May 14, 2010 when a motion was filed on her behalf seeking sanctions against the WIN Plaintiffs regarding a subpoena. *See* Adversary Proceeding 09-0070, dkt. no. 56, Bankruptcy Case 09-005868. While she did not have authority to sue on behalf of the trust, since she was not its trustee, she had an unlimited opportunity to inform herself of the litigation involving the efforts of the WIN Plaintiffs and of Trustee Fox to gain access to the assets of the Soad Wattar Trust. She could have sought to intervene at that time to argue that Richard Sharif was not protecting her interests as a beneficiary; she could have asked for leave to litigate the issues involved. Beneficiaries do not have standing to

-29-

sue absent the trustee's wrongful refusal to do so. *Wong v. H.S.B.C., USA, Inc.,* 2010 WL 3154976, at *6 (S.D.N.Y. 2010).

In *Wong* the district court reviewed the order of a bankruptcy court that said "it is a trustee and not a beneficiary of a trust that is the appropriate party to bring an action on behalf of the trust beneficiaries." *Wong,* at *6. The district court cited to English case law that allows a beneficiary to sue the trustee and culpable third parties in special circumstances which embrace a failure, excusable or inexcusable, by the trustee to the beneficiary to protect the trust estate or to protect the interests of the beneficiary in the trust estate. *See Hayim v. Citibank NA,* [1987] A.C. 730, 733 (P.C.). *Wong,* at *6. Plaintiff Ragda Sharifeh could have asked on May 14, 2010 to be allowed to sue on behalf of the trust. Instead, she filed a motion to intervene on December 3, 2010 in Bankruptcy Case 09-005868, dkt. no. 68, long after the resolution of the issues in dispute on May 14, 2010, the date she sought court action regarding the WIN Plaintiffs' subpoena. Had she intervened and complained about Richard Sharif's conduct as trustee of the Soad Wattar Trust before the July 6, 2010 judgment order was entered, she could have asserted the claims she seeks to proceed on herein in Adversary Proceeding 10-2239. She could have provided the information that the WIN Plaintiffs and Trustee Fox sought regarding the formation, funding and operation of the Soad Wattar Trust. She was on notice on May 14, 2010 that the WIN Plaintiffs were seeking to have the trust declared to be the Debtor's *alter ego.* That request for that relief was made in Count V of the Amended Adversary Complaint which was filed on November 3, 2009, eight months before her motion was filed on May 14, 2010. Adversary Proceeding 09-0070, dkt. no. 10, p.12.

As noted in this opinion, *infra* at Section VI, page 18, Plaintiff Ragda Sharifeh was notified of the filing of the bankruptcy case as an unsecured creditor scheduled on the Debtor's Schedule F no later than February 28, 2009.

For the reasons noted above, Plaintiff's Count I claim for Conversion is dismissed with prejudice. The court finds that there is no set of facts on which Plaintiff Ragda Sharifeh can recover against Trustee Fox for conversion.

## XI. COUNT II: Request for Declaratory Judgment

At Count II Plaintiff Ragda Sharifeh seeks a declaratory judgment. She bases this request for

relief on the following factual allegations:

(1) an October 8, 2007 amendment to the Soad Wattar Revocable Living
Trust that named Ragda Sharifeh as a successor beneficiary;

(2) an October 8, 2007 amendment to that Trust that named Ragda Sharifeh, Haifa
Kaj, Raja Sharifeh and Hana Sharifeh as successor beneficiaries of Hartford Life
Insurance Policy VL 931377 which insured the life of Soad Watter, who passed away
on March 17, 2010;

(3) Debtor Richard Sharif resigned as Trustee of the Soad Watter
evocable Living Trust on July 21, 2010;

(4) that Ragda Sharifeh succeeded Richard Sharif as Trustee of the Soad
Wattar Revocable Living Trust; and

(5) that Richard Sharif did not personally own the assets of the Soad Wattar
Revocable Living Trust such that those assets did not become property of his
bankruptcy estate.


She asks that the court find that the assets being held by Trustee Fox are not property of the
bankruptcy estate; that Ragda Sharifeh is the legal and equitable owner of the assets pursuant to an
amendment made to the Soad Wattar Revocable Living Trust on October 8, 2007; and that Ragda
Sharifeh, Haifa Kaj, Raja Sharifeh and Hana Sharifeh are beneficiaries of Hartford Life Insurance
Policy No. VL 9319377.

Declaratory judgments may issue if a substantial controversy exists between the parties and
such a judgment can avoid accrual of avoidable damages to one not certain of his rights and to afford
him an early adjudication without waiting until his adversary should see fit to begin suit, after
damages have accrued. *Cunningham Bros., Inc. v. Bail,* 407 F.2d 1165, 1167-68 (7th Cir. 1969).

As with Count I, the court accepts these allegations as true. However, even if true, these facts
do not support her request for a declaratory judgment. Plaintiff Ragda Sharifeh has not plead
sufficient facts and law to warrant declarations that the assets in issue are not the property of the
bankruptcy estate; that Plaintiff Ragda Sharifeh is the legal and equitable owner of the assets in issue
or that Ragda Sharifeh, Haifa Kaj, Raja Sharifeh and Hana Sharifeh are the beneficiaries of the
Hartford insurance policy.

The court notes that Plaintiff Ragda Sharifeh has testified that Debtor Richard Sharif acted as her agent in the conduct of the Texas federal court litigation from which the WIN Plaintiffs' judgment originated. She directed Richard Sharif to file the litigation, instructed him on how to proceed with the litigation and instructed him to represent to third parties that he owned the Loan Application assets. Transcript of June 10, 2010 Deposition of Ragda Sharifeh, 09 B 05868, dkt. no. 78, Exhibit A, pp. 47-48. She should not be allowed at one point in time to have Richard Sharif represent that he owned the assets and then later claim the contrary, that she or the trust owns the assets.

At page 95 of the Deposition, Ragda Sharifeh testified about telling Richard Sharif to use property to buy a house for their mother:

> Q: And again, it's checked self-employed.
> Were you aware that Richard represented
> to Washington Mutual Bank that he, as self-employed,
> owned Logan Square MRI Center, Sharif Pharmacy, and
> Hermosa Medical Center?
>
> A. What I tod him is to use the home
> address, the clinic address, in order to secure the
> amount of money to be used to buy the house for mom.

At page 96 of the Deposition, Ragda Sharifeh testified that the assets were being held out by the Debtor as his own although he was not the owner of them:

> Q. So did you know that these assets, the company's and the real
> estate, were being held out by Richard as representing that he
> owned all of them? He was representing to the bank that he owned
> the real estate and the business?
>
> A. He is, he is not the owner. Otherwise

-32-

his ex-wife would have cleaned him out, but I told

him that he could make that statement.

At page 39 of the Deposition, Ragda Sharifeh was asked whether she discussed the lawsuit

herein with Richard Sharif:

> Q. Have you had any conversations with Richard Sharif regarding this, this
> lawsuit that we're here on?

> A. Just for a little bit.  I went over there, took my paperwork.  We are brother and
> sister, we talk about some things.

At page 41 of the Deposition, Ragda Sharifeh was asked if she knew about Richard Sharif's

bankruptcy filing.  She answered:

> A. We talked about how he doesn't have any money and that there is a lawsuit against
> him and therefore he was forced to file for bankruptcy.  He doesn't talk very much
> about his private business with me.

At pages 45-51 of the Deposition, Ragda Sharifeh was asked why she authorized Richard to

bring a lawsuit:

> Q.  Okay.  And why did you authorize Richard to bring a lawsuit?

> A.  He speaks English better than I do.  He is more familiar with the laws here.
> That's why I am continuously asking for assistance because my English is not that
> good.

> Q. So did Richard enter into the deal that resulted in the lawsuit?
> A. Maybe.

-33-

Q. And he entered into it on your behalf?

A. Yes.

Q. And did you instruct him to enter into the deal?

A. What I wanted, he did.

Q. But you can't remember what the lawsuit is about?

A. (In English) I don't remember.

Q. Do you know if it related to Wellness International Network?

A. Yes.

Q. And did you direct Richard to file the lawsuit against Wellness International Network?

A. Of course.

Q. And Richard was operating under your instructions when he filed the lawsuit against Wellness?

A. Of course.

A. I told him to do this because he lost the money. He lost my mother's money, he lost the family money, and I was a partner.

Q. Partner in what?

A. And I had some financial interest in it, the money was lost, my mother's money was lost, so we were asking for our rights.

Q. So when Richard, Richard sued Wellness, were you involved in that litigation?

A. Mm-hmm.

Q. And you were–and was Richard acting as your agent? I mean was he acting on your behalf?

A. Yes.

Q. What do you mean as long as he puts you in the picture?

A. To tell me, to tell me what he was doing, how he was operating the business, how he was managing, what's right, what's wrong, what we should do better next time. He was my agent.

The court notes that principals are bound by their agent's authorized conduct. *See* Restatement (Third) of Agency § 1.01 (2006).

On page 116 of the Deposition, Plaintiff Ragda Sharifeh testified about the Loan Application assets:

Q. So Richard Sharif did not commit fraud when he filled out the Washington Mutual Loan Application, which is Exhibit 54?

A. We put down on the application that it is family ownership, family property, and it was up to the bank to review or look into it or, and make a decision.

When it suits the interests of Plaintiff Ragda Sharifeh and Debtor Richard Sharif, Plaintiff Ragda Sharifeh allows Richard Sharif to claim ownership of certain assets. However, because Richard Sharif has not satisfied the discovery requests of the WIN Plaintiffs and Trustee Fox for information of exactly what the Soad Wattar Trust consists of, this court cannot allow Debtor Richard Sharif or Plaintiff Ragda Sharifeh to take from Trustee Fox assets that were held by Richard Sharif.

Plaintiff Ragda Sharifeh has also refused to cooperate with the judicial process. At page 24 of her Deposition she was asked whether she complied with Request to Produce No. 4:

> Q.  See that request number 4. Do you have any documents, corporate documents, for Sharif Pharmacy?

> A.  No.

> Q.  What did you do—well, did you make any attempt to look for any documents relating to Sharif Pharmacy, Inc. In response to this request?

> A. No.

Her conduct is as offensive as the conduct that the Fifth Circuit Court of Appeals condemned.  Plaintiff Ragda Sharifeh wants to rely on documents that purport to establish that she is a beneficiary and trustee of the Soad Wattar Trust while she refused to cooperate with the discovery process herein regarding those documents and issues.  The refusal of Plaintiff's attorney to answer the court's questions at the July 27, 2011 hearing reflects this profound inability to cooperate as required.

If Plaintiff Ragda Sharifeh is a beneficiary, she may be able to sue trustee Richard Sharif for breach of fiduciary duties to her.  Restatement of Trust (Second) § 199[3].  The court notes that

---

[3]Restatement of Trust (Second) § 199 provides that [t]he beneficiary of a trust can maintain a suit
(a) to compel the trustee to perform his duties as trustee;
(b) to enjoin the trustee from committing a breach of trust;

while she purports to sue Richard Sharif herein in his capacity as the former trustee of the Soad
Wattar Revocable Living Trust, she does not accuse him of misconduct in the complaint; she simply
names him as a Defendant in the caption.

The court notes that Plaintiff Ragda Sharifeh asks that she, Haifa Kaj, Hana Sharifeh and
Raja Sharifeh be declared beneficiaries of Hartford Life Insurance Policy VL 931377. The court
declines to order relief on behalf of Haifa Kaj, Raja Sharifeh and Hana Sharifeh because Plaintiff
Ragda Sharifeh has not shown that she represents Haifa Kaj, Hana Sharifeh and Raja Sharifeh as a
trustee. Again, Plaintiff Ragda Sharifeh asserts that she became the trust's trustee after July 21,
2010. That was fifteen days after the trust's assets became property of Debtor Richard Sharif's
estate. Therefore, there was nothing for Plaintiff to become trustee of, negating her authority to sue
herein on behalf of Haifa Kaj, Hana Sharifeh and Raja Sharifeh. The court notes that Haifa Kaj, as a
creditor, was notified of the filing of Debtor Richard Sharif's bankruptcy petition on February 28,
2009 when a February 25, 2009 certificate of notice was docketed herein. *See* Bankruptcy Case 09-
05868, dkt. no. 9, February 25, 2009 Certificate of Notice.

Plaintiff Ragda Sharifeh has failed to show that a declaratory judgment herein can avoid the
accrual of damages to one not certain of her rights, affording her an early adjudication without
waiting until her adversary sues after damages accrue. The record herein shows that she has a
declaration concerning her rights regarding the Soad Wattar Trust in the form of this court's July 6,
2010; March 10, 2011 and March 14, 2011 orders. As a matter of law, because the facts alleged
herein do not support her request for relief, and because there is no set of facts on which Plaintiff
Ragda Sharifeh can be awarded the declaratory judgment she seeks, this court hereby dismisses
Count II of Adversary Complaint 10-2239 with prejudice.

## XII.   Res Judicata and Collateral Estoppel

Trustee Fox asks that Plaintiff Ragda Sharifeh's Adversary Proceeding be dismissed on res

---

(c) to compel the trustee to redress a breach of trust;
(d) to appoint a receiver a receiver to take possession of the trust property and   administer the trust
(e) to remove the trustee.

judicata and collateral estoppel grounds. The court will consider the application of each doctrine to the issues raised herein.

An action will be barred by res judicata when there exists: 1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) the claims raised in the subsequent action were identical to those decided in the prior action and (3) the prior action involved the same parties or their privies. *Hoxworth v. Blinder,* 74 F.3d 205, 208 (10th Cir. 1996); *Retired Chicago Police Association v. City of Chicago,* 7 F.3d 584, 591 (7th Cir. 1993). Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry,* 449 U.S. 90, 94 (1980).

The doctrine of res judicata is applicable and bars her effort to relitigate the issues herein through Adversary Proceeding 10-2239. She is bound by the July 6, 2010 judgment order because (1) that order represented a final judgment on the merits rendered by a court of competent jurisdiction, this court; (2) the claims raised in this subsequent Adversary Proceeding are identical to those raised in the pleadings that resulted in the entry of the July 6, 2010 order: who should possess and have title to the assets of the Soad Wattar Trust and (3) the prior action involved the same parties or their privies: she was represented therein by Debtor Richard Sharif, the trustee of the Soad Wattar Trust.

Res judicata also applies to bar the relitigation of the issues involved in Adversary Proceeding 10-2239 based on the two motions that Plaintiff Ragda Sharifeh prosecuted in the bankruptcy case in December, 2010. On December 3, 2010 she filed a Motion to Vacate Judgment or Alternatively To Stay Enforcement of Judgment. 09-5868, dkt. no. 67. On December 3, 2010 she also filed a Motion to Intervene on Behalf of the Soad Wattar Revocable Living Trust of 1992 and Ragda Sharifeh. 09-05868, dkt. no. 68. Her Motion to Intervene was resolved by a March 10, 2010 amended order denying it. This court found therein that Ragda Sharifeh was not a successor trustee of the Soad Wattar Trust. 09-05868, dkt. no. 94, p.20. Her motion to Vacate Judgment was resolved by a March 14, 2010 order where this court held that as a successor beneficiary she did not have authority to seek relief regarding the trust as only the trustee of the Soad Wattar Trust could sue or be sued regarding the trust. 09-5858, dkt. no. 95, p. 17. The court also held therein on page 18 that she did not become a successor trustee after Debtor Richard Sharif resigned as trustee on July 21, 2010. The three requirements for res judicata have been met: the two December, 2010 motions were filed on Ragda Sharifeh's behalf (same parties); they

-38-

involved the ownership of the trust's assets (same issues) and they were litigated to final unappealed orders (final judgment on the merits).

Plaintiff Ragda Sharifeh is trying to obtain the third bite of the proverbial apple. She is bound by the July 6, 1020 judgment order based on the conduct of her trustee, Debtor Richard Sharif. She is bound by the two adverse rulings regarding the two motions she independently filed in December, 2010. She can not be allowed to relitigate the same issues regarding her authority to sue on behalf of the Soad Wattar Trust as a successor beneficiary or as a successor trustee, the issues she did not prevail on previously.

Trustee Fox also asks that Plaintiff Ragda Sharifeh's Adversary Proceeding be dismissed on collateral estoppel grounds. Because collateral estoppel is an affirmative defense, Trustee Fox bears the burden of proving each of its requirements. *Adair v. Sherman*, 230 F.3d. 890, 894 (7th Cir. 2000). The court notes that Trustee Fox failed to discuss the application of collateral estoppel to the issues raised in this adversary proceeding. However, because the court views the preservation of judicial resources to be of paramount importance, the court will conduct an independent analysis of the doctrine's application to the issues herein.

Under the doctrine of collateral estoppel, or issue preclusion as it is formally known, a party will be prevented from relitigating an issue that it has previously litigated and lost. *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002). Collateral estoppel has four requirements: (1) the issue sought to be precluded must be the same as the issue involved in the prior proceeding; (2) the issue must have been actually litigated in the prior proceeding; (3) determination of the issue must have been essential to the final judgment in the earlier proceeding; and (4) the party against whom estoppel is asserted must have been fully represented in the prior proceeding. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987).

This court's July 6, 2010; March 10, 2011 and March 14, 2011 orders are prior adjudications of the identical issues herein regarding whether Ragda Sharifeh was a beneficiary, what authority she possessed in that status to sue Trustee Fox and others and whether she became a successor trustee after Debtor Richard Sharif resigned as trustee after the state court entered certain orders on July 21, 2010. The court finds that the prior proceedings involved the same issues as Adversary Proceeding 10-2239.

Ragda Sharifeh, as a beneficiary, was represented by Debtor Richard Sharif as the trustee of

-39-

the Soad Wattar Trust throughout the prior matters which have to be given preclusive effect because she is bound, as a matter of law, by the orders resolving the matters previously before this court. In *Anderson v. Elliott,* 1 Ill. App. 2d 448, 453 (1954), the Illinois Appellate court held that a beneficiary is bound by the outcome of a lawsuit involving the trustee in which the trustee was a party and rendered actual and efficient protection, in the absence of a showing of bad faith on the trustee's part. That litigation did not concern the rights of the beneficiaries and the trustee as between themselves. As a beneficiary, Ragda Sharifeh is bound by the conduct of her representative, the trustee. She did not intervene to make a showing of bad faith. She could have complained that his conduct amounted to a breach of fiduciary duties owed to her. Ragda Sharifeh did not complain even though she was involved in the matters herein long before the entry of the orders she wishes to avoid being bound by.

This court's March 10, 2011 order resolved Ragda Sharifeh's Petition to Intervene on Behalf of the Soad Wattar Revocable Trust of 1992 and Ragda Sharifeh. (dkt. no.68). The March 14, 2011 order resolved her Motion to Vacate Judgement or Alternatively to Stay Enforcement of Judgment (dkt. no. 67). Pursuant to the March 10, 2011 order, which was not appealed, the court ruled that as of July 6, 2010, (i) the Soad Wattar Trust no longer existed and (ii) that the trust's assets became property of the bankruptcy estate as of the commencement of the bankruptcy case. Pursuant to the March 14, 2011 order, the court held, *inter alia,* that she was not a successor trustee of the Soad Wattar Trust. She now asks this court to declare that "the assets are not property of Richard Sharif's bankruptcy estate," and that "Ragda Sharifeh is the legal and equitable owner of the assets contained in the Soad Wattar Revocable Living Trust" when those issues were clearly resolved with the court's March 10, 2011 and March 14, 2011 orders. Ragda Sharifeh did not appeal those orders. Instead, she wants to re litigate them herein.

Next, it must be shown that the issues resolved by the court's prior orders were actually litigated. The court finds that the July 6, 2010 default judgment order may not be given preclusive effect, as the Seventh Circuit does not treat a default judgment as a proper basis for collateral estoppel.[4] *Grip-Pak, Inc. v. Ill. Tool Works, Inc.*, 694, F.2d 466, 469 (7th Cir.1996); *See also In re*

---

[4]Although the Seventh Circuit does not give preclusive effect to default judgments, the court agrees with the rationale pronounced by the Third Circuit: "We do not hesitate in holding that a party [ ] who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral

-40-

*Walker*, 232 B.R. 725, 732 (Bankr. N.D.Ill. 1999).

The court finds that the March 10, 2011 and March 14, 2011 orders which resolved Plaintiff Ragda Sharifeh's Motion to Vacate [Case No. 09-B-05868 dkt. no. 67] and Motion to Intervene [*Id.* at dkt. no. 68] satisfy the actually litigated requirement. Both of those matters were fully briefed by the parties [*Id.*, dkt. nos. 78, 82, 84], the court conducted a hearing on both motions on January 19, 2011, and subsequently issued lengthy memorandum opinions on each motion. *Id.* at dkt. nos. 67, 68.

The next issue is whether the matters at issue herein were essential to the adjudication of the court's prior orders. The court finds that this requirement is met, as the issues raised in the instant adversary proceeding were essential to the court's decision in the March 10, 2011 and March 14, 2011. Namely, in the Plaintiff's Motions to Vacate and Intervene, she alleged *inter alia*, that she was the successor trustee and successor beneficiary of the Soad Wattar Trust, she requested a turnover of the assets held in the trust, asserting that she was entitled to the proceeds of the trust. The court's disposal of those central issues concerning the Soad Watter Trust and its ownership was essential to rendering its decisions represented by the March 10, 2011 and March 14, 2011 orders.

The final issue is whether Ragda Sharifeh was fully represented in each stage involving the litigation of the Motion to Intervene and the Motion to Vacate. Plaintiff Ragda Sharifeh was represented by her counsel of record herein, Mr. Garrett S. Reidy, in both the Motion to Intervene and the Motion to Vacate. *See* Bankruptcy Case No. 09-05868, dkt. no. 66, Garrett S. Reidy Appearance. That attorney also represents her in the Adversary Proceeding 10-2239.

Accordingly, the court finds that pursuant to the doctrine of collateral estoppel, the Plaintiff Ragda Sharifeh is bound by the orders resolving the two Motions that she previously litigated before this court: the March 10, 2011 order and March 14, 2011 order. She is precluded from attempting to relitigate those matters again.

## XIII. CONCLUSION

The issues raised in this Adversary Proceeding are the identical issues litigated in the

---

estoppel application . . . [t]o hold otherwise would encourage behavior similar to [his] and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple." *In re Docteroff*, 133 F.3d 210, 213-214 (3d Cir. 1997).

pleadings initiated by this plaintiff.  This illustrates that the filing of this adversary proceeding was nothing more than Plaintiff Ragda Sharifeh's attempt to get a third bite of the apple.  Plaintiff Radga Sharifeh got her first bite of the apple when she stayed on the sidelines while Adversary Proceeding 09-0770 was litigated.  She got her second and third bites when she filed the motions to vacate and to intervene on December 3, 2010.

Count I is dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.

Count I is dismissed with prejudice on res judicata grounds as Plaintiff Radga Sharifeh will not be allowed to relitigate the three previous orders.

Count I is dismissed with prejudice on collateral estoppel grounds as to the March 10, 2011 and March 14, 2011 orders.

Count II is dismissed with prejudice under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

Count II is dismissed on res judicata grounds as Plaintiff Ragda Sharifeh will not be allowed to relitigate the three previous orders.

Count II is dismissed on collateral estoppel grounds as to the March 10, 2011 and March 14, 2011 orders.

Dated: August 24, 2011                    ENTERED:

                                          _Jacqueline P. Cox_
                                          _J. P. Cox_
                                          _____

                                          Jacqueline P. Cox
                                          United States Bankruptcy Judge